FILED by KS D.C.

Aug 24, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20439-CR-COOKE/O'SULLIVAN

18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
18 U.S.C. § 2
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

v.

GREISY ROSARIO VARONA DOCASAL,

      **Defendant.**
_____/

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services were typically made directly to a Medicare-certified HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries.

4. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. In Florida, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. SafeGuard Services protected the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

## Part A Coverage and Regulations

### Reimbursements

5.      The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if:

(a)     the patient was confined to the home, also referred to as homebound;

(b)     the patient was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

(c)     the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

### Record Keeping Requirements

6.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

7.      Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were: (i) a POC that included the physician

3

order, diagnoses, types of services/frequency of visits, prognosis/rehabilitation potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

8. Additionally, Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a patient. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health aide was required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "skilled nursing progress notes" and "home health aide notes/observations."

**The Defendant and Relevant Entities**

9. ACM Home Health Corp. ("ACM Home Health") was a Florida corporation located at 10511 N. Kendall Drive, Suite C204, Miami, Florida, that purported to do business as an HHA in Miami-Dade County, Florida.

10. Eternity Life Home Health Care, Inc. ("Eternity Life Home Health") was a Florida corporation located at 5785 N.W. 151st Street, Miami Lakes, Florida, that purported to do business as an HHA in Miami-Dade County, Florida.

11. TC Home Health Care, Inc. ("TC Home Health") was a Florida corporation located at 7600 West 20th Avenue, Suite 102, Hialeah, Florida, that purported to do business as an HHA in Miami-Dade County, Florida.

12. Defendant **GREISY ROSARIO VARONA DOCASAL** was a resident of Miami-Dade County, Florida.

**COUNT 1**
**Conspiracy to Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning in or around September 2015, and continuing through in or around May 2018, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**GREISY ROSARIO VARONA DOCASAL,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly, combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), that is, to knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

**PURPOSE OF THE CONSPIRACY**

3. It was a purpose of the conspiracy for the defendant and her co-conspirators to unlawfully enrich themselves by: (a) soliciting and receiving kickbacks and bribes for referring

Medicare beneficiaries to ACH Home Health, Eternity Life Home Health, and TC Home Health (collectively "the HHAs"), to serve as patients; (b) submitting and causing the submission of claims to Medicare for home health services that the HHAs purportedly provided to Medicare beneficiaries; (c) causing Medicare to make payments to the HHAs as a result of such claims; (d) concealing the payment and receipt of the kickbacks; and (e) diverting the proceeds for the defendant and other co-conspirators' personal use, the use and benefit of others, and to further the conspiracy.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and her co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **GREISY ROSARIO VARONA DOCASAL** solicited and received kickbacks from co-conspirators in return for referring Medicare beneficiaries to the HHAs.

5. **GREISY ROSARIO VARONA DOCASAL** and her co-conspirators caused the HHAs to submit claims to Medicare for home health services purportedly provided to the recruited Medicare beneficiaries.

6. **GREISY ROSARIO VARONA DOCASAL** and her co-conspirators caused Medicare to pay the HHAs based upon the home health services purportedly provided to the recruited Medicare beneficiaries.

### OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1. On or about October 25, 2017, **GREISY ROSARIO VARONA DOCASAL** received United States currency totaling approximately $3,000 as kickback payments for referring Medicare beneficiaries to Eternity Life Home Health.

2. On or about October 27, 2017, **GREISY ROSARIO VARONA DOCASAL** received United States currency totaling approximately $3,000 as kickback payments for referring Medicare beneficiaries to Eternity Life Home Health.

3. On or about December 7, 2017, **GREISY ROSARIO VARONA DOCASAL** received United States currency totaling approximately $3,000 as kickback payments for referring Medicare beneficiaries to Eternity Life Home Health.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-4
### Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**GREISY ROSARIO VARONA DOCASAL,**

did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service, that is, home health services, for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date | Approximate Kickback Amount |
|---|---|---|
| 2 | October 25, 2017 | $3,000 |
| 3 | October 27, 2017 | $3,000 |
| 4 | December 7, 2017 | $3,000 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

## FORFEITURE
### (18 U.S.C. § 982(a)(7))

1. The allegations contained in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of property in which the defendant, **GREISY ROSARIO VARONA DOCASAL,** has an interest.

2. Upon conviction of any violation alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set

forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

for

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

AIMEE C. JIMENEZ
ASSISTANT UNITED STATES ATTORNEY

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

GREISY ROSARIO VARONA DOCASAL,

_____Defendant._____/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY***

Superseding Case Information:

**Court Division:** (Select One)
- [✓] Miami
- [ ] Key West
- [ ] FTL
- [ ] WPB
- [ ] FTP

New defendant(s) [ ] Yes [ ] No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.
3. Interpreter: (Yes or No) **No**
   List language and/or dialect **Spanish**
4. This case will take **3** days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   0 to 5 days       [✓]
   - II  6 to 10 days      [ ]
   - III 11 to 20 days     [ ]
   - IV  21 to 60 days     [ ]
   - V   61 days and over  [ ]

   (Check only one)
   - Petty        [ ]
   - Minor        [ ]
   - Misdemeanor  [ ]
   - Felony       [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**
8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? (Yes or No) **No**
9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_____
AIMEE C. JIMENEZ
Assistant United States Attorney
Court ID No.     A5500795

*Penalty Sheet(s) attached

REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** GREISY ROSARIO VARONA DOCASAL

**Case No:** _____

Count #: 1

Conspiracy to Receive Health Care Kickbacks

Title 18, United States Code, Section 371

\* **Max. Penalty**:     Five (5) years' imprisonment

Counts #: 2-4

Receipt of Kickbacks in Connection with a Federal Health Care Program

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

\***Max. Penalty:**     Ten (10) years' imprisonment as to each count

\***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**